Ruth EBNER, as Independent Executrix of the Estate of Emil Ebner; Howard Ebner; and Shirley Ebner, Appellants,

v.

**FIRST STATE BANK OF SMITHVILLE,**
Appellee.

No. 03–98–00351–CV.

Court of Appeals of Texas, Austin.

Aug. 31, 2000.

Rehearing Overruled Oct. 12, 2000.

in our examination of the State's issues. We    will not address this argument separately.

Will Wilson, Jr., Wilson & Varner, L.L.P., Austin, for Appellants.

Robert Summers, Hohmann & Taube, L.L.P., Austin, for Appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

LEE YEAKEL, Justice.

Appellee First State Bank of Smithville (the "Bank") brought suit for damages and injunctive relief against appellants Howard, Shirley, and Ruth Ebner (collectively, the "Ebners"),[1] for what the Bank characterizes as "the Ebners' illegal attempts to execute on a 1991 judgment in violation of a binding and enforceable Rule 11 settle-

---

1. Howard and Shirley Ebner are husband and wife. Ruth Ebner is Howard's mother and the widow of Emil Ebner. The Bank sued Howard Ebner "individually and as Executor of the Estate of Emil Ebner," Shirley Ebner individually, and Ruth Ebner "as Executrix of the Estate of Emil Ebner." The parties' pleadings from time to time interchange "Ruth Ebner" with the "Estate" or "Estate of Emil Ebner." A review of all district-court pleadings indicates that the allegations, both by and against Ruth Ebner, are intended to be in her capacity as independent executrix of the estate of Emil Ebner deceased, and we presume such intention in this opinion. Therefore, whenever we refer to Ruth Ebner, we are referring to her in her capacity as executrix of Emil Ebner's estate and acting as such.

ment agreement." The district court granted summary judgment in favor of the Bank. The Ebners contend that (1) summary judgment was improper because fact issues exist on each of the Bank's grounds for summary judgment and the Bank failed to disprove the Ebners' affirmative defenses, (2) the district court abused his discretion in granting a permanent injunction, and (3) the court erred in denying Ruth Ebner's motion for summary judgment. Because we find that issues of material fact exist regarding whether Howard and Shirley Ebner breached the agreement and whether the estate of Emil Ebner is bound by the agreement, we will reverse the judgment in part and remand the case to the district court for further proceedings.

## BACKGROUND

In 1989 Howard Ebner sued the Bank alleging violations of the Texas Deceptive Trade Practices Act,[2] usury, and "economic duress" arising out of transactions between the Bank, himself, and Emil Ebner (the "lender-liability suit").[3] In 1991 a first amended petition was filed asserting an additional cause of action against the Bank—common law fraud—and adding Ruth Ebner as a plaintiff.[4] Shirley Ebner was joined as a plaintiff in a second amended petition.[5] A third amended petition alleged additional causes of action for "intentional or negligent infliction of emotional distress," "breach of obligation of good faith," "breach of special and/or fiduciary relationship," and wrongful sequestration. In that petition, the description of the plaintiffs was not changed. In August 1991 the case was tried to a jury that returned a verdict in favor of the Ebners. At a post-verdict hearing in November 1991, the attorneys for the parties submitted a proposed final judgment to the district court. In presenting the proposed judgment, the attorney for the Bank stated:

> We are submitting it as a judgment that is supportable by the jury verdict and at the same time, contemporaneously with the Court's entry if the Court so determines of that judgment, there is an assign[ment] of claims from the [B]ank to the Ebners by which claims will be asserted for the insurance coverage. And just to make that abundantly clear, there is nothing below the table on this deal whatsoever. The [B]ank has paid two hundred thousand dollars ($200,-000.00) to the Ebners. In return of—as a part of that payment there is a covenant on behalf of the Ebners that they will not enforce or proceed with collection efforts to the [B]ank.... Except through the insurance claim, which is contemplated will be pursued.

2. Tex. Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987).

3. The original petition in the lender-liability suit styled the plaintiff as "Howard Ebner, Individually and as Executor of the Estate of Emil Ebner, Deceased" and in its body stated that "Plaintiff Howard Ebner is an individual residing in Bastrop County, Texas. Plaintiff brings this suit in his own name and as Executor of the Estate of Emil Ebner, Deceased." The Bastrop County Court's order admitting the will of Emil Ebner to probate names Ruth Ebner as executrix of Emil Ebner's estate and *does not mention Howard Ebner.* In an affidavit opposing the Bank's motion for summary judgment in the current case, Howard Ebner stated that he was never executor or co-executor of Emil Ebner's estate and never held himself out in either capacity.

4. The amended petition described Ruth Ebner as "Independent Executrix of the Estate of Emil Ebner, Deceased, who brings this suit in her own name and as Independent Executrix of Emil Ebner, Deceased" and, although the caption *continued to style* Howard Ebner both individually and as executor of Emil Ebner's estate, the body of the pleading described him only as "an individual residing in Bastrop County, Texas." The prayer sought damages for Howard Ebner alone.

5. The pleading described Shirley Ebner only as an individual residing in Bastrop County. Howard Ebner and Ruth Ebner are described as in the first amended petition. The prayer sought damages for the "plaintiffs" generally and did not distinguish among them.

Should there be recovery of the insurance the assignment and agreement further provides that any recovery will be shared fifty-fifty up until that point that the [B]ank recovers its two hundred thousand back.

The court inquired whether the agreement was in writing, was told that it was, but apparently declined to review it. The court then signed the proposed judgment. The judgment provides, *inter alia:*

[I]t is therefore ORDERED, ADJUDGED AND DECREED that Plaintiffs, HOWARD EBNER, SHIRLEY EBNER, and RUTH EBNER, as INDEPENDENT EXECUTRIX OF THE ESTATE OF EMIL EBNER, deceased do have and recover of and from Defendant FIRST STATE BANK OF SMITHVILLE the total sum of ($1,666,-112.00) (One Million, Six Hundred Sixty Six Thousand, One Hundred Twelve and no/100s Dollars), plus interest thereon from date of entry hereof and that they have and recover their cost of court.[6]

The agreement referred to at the hearing is entitled "Assignment" and provides in pertinent part that: (1) the Bank assigns to the Ebners all causes of action it may have against its insurance carriers for failing to "defend or settle" the lender-liability suit, (2) the Ebners agree to take no action to collect or enforce their judgment against the Bank, and (3) the Bank pays the Ebners $200,000. The parties to the agreement are defined as the Bank, Howard Ebner, Shirley Ebner, and Ruth Ebner in her capacity as the executrix of Emil Ebner's estate. The Bank and Howard and Shirley Ebner, but not Ruth Ebner, signed the agreement.

The Ebners immediately filed suit against Ohio Casualty Insurance Company and West American Insurance Company, the Bank's insurance carriers (the "bad-faith suit").[7] In 1993 the trial court granted summary judgment in favor of the insurers and ordered that the Ebners take nothing by the bad-faith suit. The summary judgment was affirmed on appeal.[8]

In November 1995 the insurers filed suit against Howard and Shirley Ebner, but not Ruth Ebner.[9] Against Howard and Shirley Ebner, the insurers seek an undisclosed amount of damages for civil conspiracy, fraud, constructive fraud, malicious prosecution, and abuse of process, all arising out of the bad-faith suit, and for attorney's fees incurred in both the bad-faith suit and the suit by the insurance carriers.[10] In 1997 while being deposed by the plaintiffs, one of the Ebners' attorneys noticed that Ruth Ebner had not signed the November 1991 agreement in the lender-liability suit. Subsequently, Ruth Ebner applied for and secured a writ of execution against the Bank based on the 1991 judgment in the lender-liability suit.

The Bank sued all of the Ebners for breach of contract, claiming that it was entitled to specific performance of the earlier agreement.[11] The Bank also sought

6. The judgment was signed November 18, 1991. On November 25, 1991, the court signed a "Judgment Nunc Pro Tunc" to correct an erroneous cause number in the original judgment.

7. The Ebners' original petition describes them as "HOWARD EBNER, SHIRLEY EBNER, AND RUTH EBNER, independent executor of the estate of EMIL EBNER, deceased." Ronald W. Keen, described as "an employee and adjuster acting in the course and scope of his employment for [the insurers]," was also named as a defendant.

8. *See Ebner v. Ohio Cas. Ins. Co.,* No. 04–94–53–CV, 1995 WL 611878 (Tex.App.—San Antonio October 18, 1995, writ denied) (not designated for publication).

9. The suit also includes Keen as a plaintiff and names the Bank and its president as defendants.

10. The record before us implies that the suit by the insurance carriers against Howard and Shirley Ebner is still pending.

11. Ruth Ebner is sued "as Executrix of the Estate of Emil Ebner." The Bank also brought claims of "abuse of process," "malicious civil prosecution," "business disparagement and defamation," and fraud. These ac-

attorney's fees and requested that the district court issue a temporary restraining order, a temporary injunction, and a permanent injunction, restraining the Ebners from taking any action to collect the lender-liability-suit judgment. The district court granted the Bank's requests for a temporary restraining order and temporary injunction.[12]

The Bank and Ruth Ebner both filed motions for summary judgment.[13] The Bank asserted that it was entitled to summary judgment as a matter of law on its breach-of-contract claim because the summary-judgment evidence conclusively demonstrated that the November 18, 1991 Assignment is binding on Ruth Ebner pursuant to Rule 11 of the Texas Rules of Civil Procedure because (1) Howard Ebner and two attorneys purporting to act for Ruth Ebner had actual or apparent authority to enter into the agreement on behalf of Emil Ebner's estate, (2) the estate is therefore estopped to enforce the judgment in the lender-liability suit, and (3) Ruth Ebner's actions on behalf of the estate following the creation of the agreement are barred by the doctrines of ratification and waiver. The Bank further urged that there was no evidence to support any of the affirmative defenses raised by the Ebners. Ruth Ebner asserted in her motion that the summary-judgment evidence conclusively established all essential elements of her affirmative defenses and disproved at least one element of each of the Bank's causes of action, thus entitling her to a complete summary judgment. She also asked the district court to enjoin the Bank from preventing further

attempts by the estate to collect the lender-liability-suit judgment.

The district court rendered judgment granting the Bank's motion for summary judgment and denying Ruth Ebner's motion. The court found the Ebners jointly and severally liable to pay the Bank's attorney's fees in an amount to "be determined by trial" and ordered that the Ebners be permanently enjoined from further action to collect the lender-liability-suit judgment. The court severed all the remaining claims brought by the Bank and the Ebners, resulting in a final appealable judgment.[14]

Before this Court, the Ebners challenge the court's decision to grant summary judgment, arguing that disputed fact issues exist on each ground presented by the Bank in support of summary judgment and that the Bank did not conclusively disprove the Ebners' affirmative defenses. They also contend that the court erred in granting the Bank a permanent injunction and in denying Ruth Ebner's motion for summary judgment.

## DISCUSSION

### Bank's Motion for Summary Judgment

By their first issue, the Ebners assert that "there exist numerous disputed fact issues" as to whether Emil Ebner's estate is contractually bound to the Bank "not to execute on her judgment" in the lender-liability suit and whether there is any evidence that Howard and Shirley Ebner

tions were severed by the district court and are not a part of this appeal.

12. Upon an interlocutory appeal by the Ebners, this Court affirmed the district court's action. *See Ebner v. First State Bank,* No. 03–97–602–CV, 1998 WL 105187 (Tex.App.—Austin March 12, 1998, no pet.) (not designated for publication).

13. The Bank filed a motion for partial summary judgment. Neither Howard nor Shirley Ebner moved for summary judgment.

14. The final judgment recites that the parties seek to determine through summary judgment "whether Howard Ebner, individually and as Executor of the Estate of Emil Ebner, Shirley Ebner and Ruth Ebner, as Executrix of the Estate of Emil Ebner may collect [the lender-liability-suit judgment]." In granting injunctive relief and assessing liability for attorney's fees, the judgment refers to the Ebners similarly.

have taken any action to collect the lender-liability-suit judgment.

■ The function of summary judgment is not the deprivation of a party's right to a full hearing on the merits of any real issue of fact but "is the 'elimination of patently unmeritorious claims or untenable defenses.'" *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex.1972) (quoting *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952)). To prevail on a traditional motion for summary judgment, a party must conclusively establish that there is no genuine issue of material fact and show that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). When reviewing whether there is a fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true, and every reasonable inference or any doubt must be indulged in favor of the nonmovant. *See Nixon*, 690 S.W.2d at 548–49.

■ When both the plaintiff and the defendant move for summary judgment, each must carry its own burden to conclusively prove all of the elements of their cause of action or defense as a matter of law. *See First USA Management, Inc. v. Esmond*, 911 S.W.2d 100, 103 (Tex.App.—Dallas 1995), *rev'd on other grounds*, 960 S.W.2d 625 (Tex.1997). If the trial court grants one motion for summary judgment and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides and determine all of the questions presented. *See Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997) (citing *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988)). The reviewing court should then render the judgment the trial court should have rendered. *See id.*

When, as here, the district court's summary judgment does not specify or state the grounds relied on, we will affirm the court's judgment on any meritorious theo-ry asserted in the motion and found in the record that conclusively proves the nonmovant cannot prevail. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

## A. Breach–of–Contract Claim Against Ruth Ebner

Ruth Ebner contends that either she "has proven as a matter of law" that there is no contract between the estate and the Bank precluding enforcement of the lender-liability-suit judgment or that disputed fact issues exist with regard to whether such a contract was made. The Bank responds that the reporter's record of the November 18, 1991 hearing and the agreement discussed at that hearing "both separately and together ... form a binding agreement under Rule 11." *See* Tex.R. Civ. P. 11. Rule 11 provides in its entirety:

### RULE 11. AGREEMENTS TO BE IN WRITING

Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Tex.R. Civ. P. 11 ("Rule 11").

The supreme court has stated that "Rule 11 means precisely what it says" and "[t]he clear language of the rule indicates, and this court holds, that compliance with Rule 11 is a general prerequisite for any judgment enforcing an agreement touching a pending suit." *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex.1984). Thus, for the Bank to prevail, the summary-judgment proof must establish Emil Ebner's estate was a party to an agreement made in compliance with Rule 11.

We begin by observing that the parties disagree as to what the Ebners and the Bank were seeking to accomplish at the November 18, 1991 hearing. The Bank

posits that after the jury's verdict in the lender-liability suit, the parties settled and the settlement was embodied in a written agreement *and* an "in-court agreement the parties made through their attorneys" at the hearing. The Bank asserts that the settlement contained four essential elements: (1) the Bank would agree to the form of a judgment to be rendered against it in the amount of "$1,666,000," (2) the Bank would pay the Ebners $200,000, (3) the Bank would assign certain of its claims against its insurance carriers to the Ebners, and (4) the Ebners would never attempt to enforce the judgment against the Bank. The Ebners respond that the judgment "accurately reflected the jury's verdict and was not an agreed judgment."

Not in dispute is that on November 18 the district court signed a judgment against the Bank for $1,666,112, a $200,000 bank money order was delivered to one of the Ebners' attorneys,[15] and the Bank assigned certain claims against its insurance carriers to the Ebners, including Ruth Ebner in her capacity as executrix. Although the Bank appears to have satisfied all its obligations under the post-verdict agreement, issue is joined over whether the agreement complies with Rule 11. Whether the judgment was "agreed" is of no consequence to our consideration of the requirements of Rule 11, as the rule "is a minimum requirement for enforcement of all agreements concerning pending suits, including, but not limited to, agreed judgments." *Kennedy,* 682 S.W.2d at 528.

An agreement involving pending litigation may comply with Rule 11 in either of two ways: (1) be in writing, signed, and filed with the papers as part of the court's record or (2) be made in open court and entered of record. *See* Tex.R. Civ. P. 11. "These two provisions allow the agreement[ ] to be put into written form and kept with the court's records so that the parties to the suit cannot dispute its existence or contents." *Kosowska v. Khan,* 929 S.W.2d 505, 507 (Tex.App.—San Antonio 1996, writ denied). We will examine both the written Assignment and the record of the November 18, 1991 hearing to determine if, as a matter of law, a valid Rule 11 agreement exists between Emil Ebner's estate and the Bank. We do so in the context of the district court's granting of the Bank's motion for summary judgment and denying the estate's motion. We take the evidence favorable to the estate as true and indulge every reasonable inference and resolve any doubts in its favor. *See Nixon,* 690 S.W.2d at 548–49.

### 1. The Assignment

Although the Assignment is in writing, it is not signed by Ruth Ebner as executrix or by any attorney representing the estate. The document provides a typed signature line for the Bank, but signature lines for Howard and Shirley Ebner were added by hand. There is no signature line for Ruth Ebner or the estate. Howard Ebner, Shirley Ebner, a representative of the Bank, and another person—apparently the Bank's president—all signed the agreement and initialed handwritten changes and additions to it. Ruth Ebner's initials do not appear. The signatures of the Bank's representative and of Howard Ebner and Shirley Ebner were acknowledged before a notary public. Ruth Ebner's name appears in the body of the agreement as executrix of Emil Ebner's estate, and the document contains an area where her assent to the agreement and her signature could be acknowledged, but there is no acknowledgment.

The summary-judgment proof reflects that, at the November 18 hearing, three attorneys each announced appearances on behalf of "the Ebners." None stated that

---

**15.** The bank money order, dated November 22, 1991, was payable to the order of "Rodney Varner, Esquire—Trustee on the Ebner Litigation" and bears on its face the following notation: "In Credit Upon the Judgment in Cause No. 19,431 under the Assignment dated November 18, 1991." "Cause No. 19,431" is the correct cause number of the lender-liability suit.

he represented a particular Ebner or the estate, but all of the Ebners, as well as the estate, were parties to the lender-liability suit at the time of the hearing. We hold that when the attorneys announced to the court that they were appearing for "the Ebners," they appeared for all of the Ebners, including Ruth as executrix of the estate of Emil Ebner. At the hearing, the Bank's attorney advised the district court that the "parties" had an agreement in addition to their proposed final judgment. The following exchange then occurred:

> THE COURT: And do you have this agreement in writing?
>
> [BANK'S ATTORNEY]: Yes, Your Honor, we have that agreement. The reason we've imposed upon the Court's patience this morning was that we were finalizing that and having to wait in line to get a notary. The agreement is here—
>
> THE COURT: It's not something I need to be concerned with at this point?
>
> [BANK'S ATTORNEY]: Not unless— it's not a secret, if the Court wants to review it.

There is no evidence that the district court read or otherwise reviewed the Assignment, and it was neither attached nor referred to in the final judgment in the lender-liability suit. The court did not ask the Ebners' attorneys if they concurred in the written agreement or otherwise poll the attorneys present. The parties did not ask the court to sign the proposed judgment only if he approved of the agreement. The court did not announce or indicate that he was "approving" the agreement or signing the proposed judgment conditioned upon it. The Assignment was not filed in the papers of the case at that time.[16] The attorneys for the Ebners and the Bank assured the district court that the proposed final judgment was consistent with the jury's verdict. The Bank now argues that the district court signed the judgment "[b]ased upon the attorneys' representations [concerning the Assignment]."

The Bank offers no explanation for Ruth Ebner's failure to sign the agreement for the estate other than to direct this Court to contradictory testimony that an attorney for the Bank was told by one of the Ebners' attorneys that "Howard Ebner, who was co-executor, would sign the Assignment to bind the estate." However, the Assignment is signed by Howard Ebner only as an individual, the agreement itself does not describe Howard Ebner as a representative of Emil Ebner's estate, and his acknowledgment states only that he executed the agreement "in the capacity therein stated." The agreement refers to Howard Ebner only in his individual capacity.

The summary-judgment proof does not conclusively establish a written agreement in compliance with Rule 11. "Rule 11 ... requires agreements between attorneys or parties concerning a pending suit to be in. writing, signed and filed in the record of the cause to be enforceable. Once the existence of such an agreement becomes disputed, it is unenforceable unless it comports with these requirements." *London Mkt. Cos. v. Schattman*, 811 S.W.2d 550, 552 (Tex.1991) (citing *Kennedy*, 682 S.W.2d at 530).

### 2. The "Made in Open Court" Alternative of Rule 11

■ Rule 11 also provides that an oral agreement may be sufficient if "made in open court and entered of record." Tex.R. Civ. P. 11. In spite of the fact that the Assignment had been drafted and signed

---

**16.** The parties state that the Assignment was not in fact filed until the estate attempted to collect the lender-liability-suit judgment, some six years after the post-verdict hearing, but no party directs this Court to a portion of the record where the date of filing can be confirmed. However, the supreme court has held that Rule 11's filing requirement is met if "the agreement is filed before it is sought to be enforced." *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex.1995).

beforehand and was neither presented to the court nor filed at the hearing, the Bank argues, "The Statement of Facts is also a sufficient, binding Rule 11 Agreement. The parties' lawyers agreed to the settlement in open court and thereby entered the settlement of record." The Bank's argument is that if the written agreement fails due to the lack of Ruth Ebner's signature, then the oral pronouncement in court satisfies Rule 11.

The basic provisions of what is now Rule 11 were adopted in 1840 under the laws of the Republic of Texas. *See Kennedy*, 682 S.W.2d at 526 (citing Repub. Tex. Dist. Ct. R. 28, 1 Tex. 852 (1848), *reprinted in Rules of Procedure in Early Texas Courts*, 65 Tex. L.Rev. 451, 461 (1986); Tex. Dist. Ct. R. 47, 47 Tex. 625 (1877)). The rule's rationale was to require all agreements of counsel to be in writing if they were to be enforced by the court. *See id.* at 526–27 (citing *Birdwell v. Cox*, 18 Tex. 535, 537 (1857)). In 1892, the original rule was amended by the addition of the final phrase allowing an agreement to be made in open court and "entered of record." *See id.* at 526 n. 1 (citing Tex. Dist. & County Ct. R. 47, 84 Tex. 715 (1892)).[17] The parties direct us to no authority and we have located none providing either the supreme court's motivation for the 1892 amendment or the effect of the amendment when a written agreement pre-dates the announcement in open court of that very agreement. We are thus presented with a novel question: may the in-court recitation that there exists a written agreement of the parties cure omissions in the writing that are necessary to satisfy Rule 11?

We begin by observing that the overall purpose of Rule 11 is "to avoid disputes over the existence or terms of an oral agreement between counsel." *London Mkt. Cos.*, 811 S.W.2d at 552 (citing *Ken-*

*nedy*, 682 S.W.2d at 526–27); *Discovery Operating, Inc. v. Baskin*, 855 S.W.2d 884, 886 (Tex.App.—El Paso 1993, orig. proceeding) ("The purpose of the rule is to prevent agreements themselves from becoming matters of controversy."). "To have a binding, open-court stipulation, the parties must dictate into the record all material terms of the agreement and their assent thereto." *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 734 (Tex. App.—Corpus Christi 1994, writ denied) (citing *Baskin*, 855 S.W.2d at 887). The "made in open court" option in Rule 11 has been construed to provide an alternative way to establish an agreement of the parties when the preparation of a written agreement is not practical. *See, e.g., City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979) (Rule 11 satisfied if "oral waiver or agreement made in open court is described in the judgment or an order of the court"); *Moseley v. Emco Mach. Works Co.*, 890 S.W.2d 529, 530–31 (Tex.App.—El Paso 1994, no writ) (agreement settling case dictated to court reporter did not satisfy Rule 11 where there was no agreed judgment signed by parties, no formal announcement of approval, and no order of court making agreement part of judgment); *Herschbach*, 883 S.W.2d at 734 (Rule 11 not satisfied where counsel's remarks were "uncertain and did not state the terms of any stipulation"). Nothing in our jurisprudence addresses this fact situation, but to allow a written agreement to be "supplemented" by the parties' or their attorneys' subsequent in-court oral statements leads to the very mischief that the rule seeks to prevent. More importantly, the record of the November 18 hearing fails to illustrate as a matter of law that the parties entered into an oral Rule 11 agreement.

---

**17.** The only difference between current Rule 11 and the 1892 version of rule 47 is that the current rule is prefaced, "Unless otherwise provided in these rules, . . . ." *Compare* Tex. Dist. & County Ct. R. 47, 84 Tex. 715 (1892),

*with* Tex.R. Civ. P. 11. This phrase was added to Rule 11 in 1988 to make it clear that the rule "is subject to modification by any other rule of Civil Procedure." Tex.R. Civ. P. Ann. 11 cmt. (West Supp.2000).

### 3. Failure of the Assignment to Literally Comply with Rule 11

The written agreement before this Court—the Assignment—does not meet the literal terms of Rule 11 because it is not signed by either Ruth Ebner or an attorney representing her or Emil Ebner's estate. *See* Tex.R. Civ. P. 11. Thus, it would seem the Assignment must fail. *See Kennedy*, 682 S.W.2d at 529 (compliance with Rule 11 is "a general prerequisite for *any* judgment enforcing an agreement touching a pending suit") (emphasis added). The district court's judgment enforces the Assignment, an agreement touching a pending suit.

The facts of the case before us resemble those in *Kennedy*.[18] In *Kennedy*, the parties to a pending suit gathered for depositions but became involved in discussions that resulted in the eventual signing of documents settling the suit. *See id.* at 526. However, Kennedy did not sign the documents. *See id.* The other parties amended their pleadings seeking to enforce the agreement as an oral contract and further pleaded the oral agreement as a defense to claims asserted by Kennedy. *See id.* Kennedy responded, denying that he had entered into any settlement agreement and pointing out the "noncompliance of any alleged agreement with Rule 11 of the Texas Rules of Civil Procedure." *Id.* After a jury trial, the trial court rendered a judgment against Kennedy that was affirmed by the court of appeals to the effect that "Rule 11 does not prohibit the enforcement of disputed oral settlement agreements." *Id.* The supreme court reversed, holding that compliance with Rule 11 is necessary even if an agreement otherwise satisfies the requirements of Texas contract law. *See id.* at 529 ("Rule 11 might be said to affect a substantive right by rendering certain oral contracts (i.e.,

those touching a pending suit) unenforceable in certain contexts (i.e., unless made in open court)."); *see also Padilla v. LaFrance*, 907 S.W.2d 454, 462–63 (Tex.1995) (Enoch, J., dissenting).

In *Padilla*, the supreme court, applying statute-of-frauds principles,[19] held that a series of letters among the parties' attorneys and an adjuster for one of the parties' insurers constituted a writing in compliance with Rule 11. *See Padilla*, 907 S.W.2d at 460. Before the letters comprising the settlement agreement were filed in the trial-court record, certain parties revoked their consent to the agreement. *See id.* at 461. The supreme court held that Rule 11's filing requirement is satisfied if the agreement is filed before it is sought to be enforced. *See id.* The supreme court went on to hold that although a party no longer consents to a settlement, the agreement may still be enforced if it complies with Rule 11. *See Padilla*, 907 S.W.2d at 461.

*Padilla* would thus seem to indicate that strict or literal compliance with Rule 11 is not an absolute requirement for enforcement of an agreement between parties to litigation. *Kennedy* also provides such direction: "Our holding, that Rule 11 means precisely what it says, should not be interpreted as requiring 'slavish adherence' to the literal language of the rule in all cases." *Kennedy*, 682 S.W.2d at 529 (citing *Sone v. Braunig*, 469 S.W.2d 605, 611 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.)); *see also Kosowska*, 929 S.W.2d at 508 (settlement agreement "in substantial compliance with Rule 11" may suffice). And an agreement that does not conform to Rule 11 may be enforced for equitable reasons. *See Kennedy*, 682 S.W.2d at 529 (citing *Williams v. Huling*, 43 Tex. 113, 120 (1875)). In *Williams*, the trial court dismissed a case when the plaintiff did not appear for trial. *See Williams*,

---

18. *See also Moseley v. Emco Mach. Works Co.*, 890 S.W.2d 529, 530 (Tex.App.—El Paso 1994, no writ) (factual similarity to present case).

19. *See* Tex. Bus. & Com.Code Ann. § 26.01 (West 1987).

43 Tex. at 114. The plaintiff moved to reinstate the case, alleging an agreement between counsel that there would be no disposition of the case in the absence of either of them and that plaintiff's counsel had been engaged in another court when the case was called. *See id.* at 114–15. The trial court reinstated the case and granted a default judgment against the defendant who, for reasons not explained, had withdrawn his answer. *See id.* On appeal, the defendant urged that the trial court erred in setting aside its original dismissal based "on some alleged agreement between counsel, but no such agreement was produced, and was no doubt some verbal informal understanding of some kind, interpreted by one counsel to mean one thing, and by the other to mean another." *Id.* at 116.[20] In affirming the trial court's judgment in the reinstated case, the supreme court stated:

> Although the court may not be required to enforce agreements unless in writing and signed by the parties or their attorneys, still it by no means follows that the court commits any error of which a par-

ty to such agreement may complain, by the exercise of its discretionary powers, *so as to prevent their obtaining an unfair advantage by the violation of such agreement.*

*Id.* at 120 (emphasis added).

The supreme court's holding in *Padilla*[21] and its statement in *Kennedy*[22] that *Williams* allows an equitable exception to the strictures of Rule 11[23] throws open to question the true breadth of the court's holding in *Kennedy.*[24] The question is whether Rule 11 trumps principles of contract law. Said another way, in construing agreements touching pending suits, must courts look *only* to Rule 11 or may they still apply contract-law considerations? The confusion surrounding the construction of post-*Kennedy* Rule 11 agreements is addressed in Justice Enoch's dissent in *Padilla:*

> Today the Court holds that a settlement agreement is an enforceable Rule 11 agreement despite the fact that it never complied with all requirements of the

---

**20.** In making such assertion, the defendant relied on then rule 15 of the rules governing the district courts. *See* Tex. Dist. Ct. R. 15, 32 Tex. 777–78 (1871) ("No agreement between attorneys or parties touching any suit pending will be enforced by the court, unless such agreement be in writing and signed by the parties or attorneys and filed with the papers in the cause.").

**21.** *See* 907 S.W.2d at 461.

**22.** *See* 682 S.W.2d at 529.

**23.** *See* 43 Tex. at 120.

**24.** In *Kennedy* the supreme court explained the policy behind the requirement that Rule 11 be accorded strict adherence:

> The rationale underlying Rule 11 is sensible and contributes to efficient court administration. Agreements and stipulations are welcomed by courts because they limit the matters in controversy and expedite trial proceedings. Rule 11 ensures that such agreements do not themselves become sources of controversy, impeding resolution of suits. *The requirements of Rule 11 are not onerous; the benefits are substantial.*

> The instant case illustrates the wisdom of the rule. The purported oral settlement agreement with Forrest Kennedy could easily have been reduced to writing and signed. *In fact, all other parties to the suit did sign agreements comporting with Rule 11.* Forrest Kennedy's pleadings clearly, emphatically and unequivocally denied entering into an oral settlement agreement.
> . . . .
> Respondents attempt to bring this case within an exception to Rule 11 by claiming that the oral agreement is "undisputed." They point this court to reams of testimony and eventual favorable jury findings. This argument begs the question. *The oral agreement was disputed and unenforceable at the moment its existence was denied in the pleadings; Rule 11 prohibits further inquiry.*
> . . . .
> A requirement that an out-of-court settlement be memorialized by a writing should aid the settlement process, permitting free and frank discussion and negotiation without fear that a careless word or mistake of meaning will itself become the basis for further litigation.
> *Kennedy,* 682 S.W.2d at 530 (emphasis added).

rule before the existence and terms of the agreement became disputed. But for this Court's prior opinion in *Kennedy* ..., I would agree that the settlement agreement in this case is enforceable as a binding contract between the parties regardless of whether it is ever filed as a Rule 11 agreement. *Kennedy*, however, engrafted the Rule 11 requirements on the substantive principles of contract law. In my view, *Kennedy*, unless overruled, compels us to conclude that the settlement agreement in the case is unenforceable because, although the agreement is otherwise enforceable as a binding contract, it did not comport with the requirements of Rule 11 at the time Padilla sought to enforce the agreement. I respectfully dissent.

*Padilla*, 907 S.W.2d at 462 (Enoch, J., dissenting). Justice Enoch then notes his belief that *Kennedy* significantly departs from previous Rule 11 jurisprudence and substantive contract law in requiring that an agreement must be in writing, signed, and filed with the court before it is enforceable; he does not discuss the *Kennedy* court's equitable-exception *dictum*. *See id.* at 462–64. At the time of the *Williams* decision, Rule 11's predecessor did not allow agreements in the course of litigation to be established by announcement in open court. *See* Tex. Dist. Ct. R. 15, 32 Tex. 777–78 (1871). This option did not appear until some years later. *See* Tex. Dist. & County Ct. R. 47, 84 Tex. 715 (1892). Thus, if *Williams* is still viable, and the supreme court has stated that it is, agreements that do not conform to Rule 11 may yet be enforced for equitable reasons. *See Kennedy*, 682 S.W.2d at 529.[25]

Finally, we observe a slight yet significant factual distinction between this case and *Kennedy*. It does not appear that the unsigned *Kennedy* agreement was ever presented to the trial court.[26] Here, the estate's attorneys were present in the district court when the Bank's attorney announced that there was a "simultaneous" agreement and explained to the court at least some of its terms. The estate's attorneys neither objected to the Bank's lawyer's recitation nor specifically expressed assent to it. When given an opportunity by the court to comment, they declined.

### 4. Summary–Judgment Proof

■ The Bank and Ruth Ebner both moved for summary judgment on the agreement. The Bank urged that the Assignment is enforceable against Ruth Ebner and the estate as a matter of law, while she asserted that it is not. The district court granted the Bank's motion and denied the other. Thus, we take the evidence favorable to Ruth Ebner and the estate as true and indulge every inference and resolve any doubts in their favor. *See Nixon*, 690 S.W.2d at 548–49.

The summary-judgment proof reflects that the Assignment is conditioned upon its execution by all parties to it. Ruth Ebner, as executrix, is reflected in the Assignment as a party but never signed it. The Assignment is not in literal compliance with Rule 11. *See* Tex.R. Civ. P. 11 (any agreement touching a pending suit must be signed). At the time of the November 18, 1991 hearing, the Bank's attorney was aware that Ruth Ebner had not signed the agreement and communicated this to the Bank's president. Howard Ebner's signature on the Assignment did not bind the estate of Emil Ebner because he was never an executor of the estate. At the November 18 hearing, no attorney for Ruth Ebner or the estate specifically stated that Ruth Ebner had agreed to the Assignment on behalf of the estate. Ruth

---

**25.** The supreme court also notes that an agreement *in compliance* with Rule 11 may be attacked on the grounds of fraud or mistake. *See Kennedy*, 682 S.W.2d at 529 (citing *Burnaman v. Heaton*, 150 Tex. 333, 240 S.W.2d 288 (1951)).

**26.** *See Kennedy v. Hyde*, 666 S.W.2d 325, 327 (Tex.App.—Fort Worth), *rev'd*, 682 S.W.2d 525 (Tex.1984) (more complete factual discussion found in opinion of court of appeals).

Ebner did not appear at the hearing. By affidavit and deposition, Ruth Ebner stated that she (1) never agreed to the Assignment, (2) did not authorize anyone to sign it on her behalf, (3) did not authorize anyone to agree to it on her behalf, (4) was not aware of its existence at the time the lender-liability-suit judgment was entered, (5) did not know of its existence until June 1997, and (5) received no part of the $200,000 paid by the Bank. Howard Ebner's affidavit denies that he settled or compromised the lender-liability suit on behalf of Ruth Ebner. Ruth Ebner's attorney in the lender-liability suit testified that Ruth Ebner authorized neither him nor his co-counsel, who was also in court on November 18, to "bind her to the Assignment or the purported oral Rule 11 agreement ... or to any other agreement for compromise or settlement of [the lender-liability suit]." The attorney, who was also the payee of the Bank's $200,000 money order, further testified that he did not pay any of the money to Ruth Ebner "in any ... capacity." The third attorney who appeared for "the Ebners" at the November 18 hearing denied that he told the Bank's attorney that Howard Ebner would sign the agreement for Emil Ebner's estate or that Howard Ebner would bind either the estate or Ruth Ebner "to the Assignment or any settlement of [the lender-liability suit]." An attorney for the Ebners in the bad-faith suit stated that although Ruth Ebner's name appeared in the style of that suit, he had never spoken to or communicated with Ruth Ebner, she attended no formal or informal proceedings with respect to that suit, and he never entered into any engagement or fee agreement with her in any capacity. Ruth Ebner stated that she did not know that she was named as a plaintiff in the bad-faith suit until June 1997.

### Actual and Apparent Authority

■ The Bank's motion asserts that Ruth Ebner and the estate are bound by the Assignment because Ruth Ebner conferred upon her attorneys and Howard Ebner actual or apparent authority to settle the lender-liability suit on the estate's behalf. Generally, a court will indulge every reasonable presumption to support a settlement agreement made by a duly employed attorney. *See Webb v. Webb,* 602 S.W.2d 127, 129 (Tex.Civ.App.—Austin 1980, no writ); *Cleere v. Blaylock,* 605 S.W.2d 294, 296 (Tex.Civ.App.—Dallas 1980, no writ). However, when the evidence reveals that the attorney did not have the client's authority to agree, the agreement will not be enforced. *See Cleere,* 605 S.W.2d at 296; *see also Kelly v. Murphy,* 630 S.W.2d 759, 761 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (although attorney is presumed to be acting within authority given by client, presumption is rebuttable); *Southwestern Bell Tel. Co. v. Vidrine,* 610 S.W.2d 803, 805 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) ("mere employment of counsel does not clothe the counsel with authority to settle the cause without specific consent of the client").

■ There are two types of authority: actual and apparent. Actual authority is authority that the principal intentionally conferred on the agent or allowed the agent to believe was conferred. *See Currey v. Lone Star Steel Co.,* 676 S.W.2d 205, 209–10 (Tex.App.—Fort Worth 1984, no writ) (citing *National Cash Register Co. v. Wichita Frozen Food Lockers, Inc.,* 172 S.W.2d 781 (Tex.Civ.App.—Fort Worth 1943), *aff'd,* 142 Tex. 109, 176 S.W.2d 161 (1944)). Apparent authority exists when conduct by the principal leads a reasonable third party to believe that the agent has the authority that he purports to exercise. *See Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex.1981). To establish authority, the principal must make some manifestation to the agent (actual authority) or to a third party (apparent authority) that he is conferring such authority. *See F.M. Stigler, Inc. v. H.N.C. Realty Co.,* 595 S.W.2d 158, 163 (Tex.Civ. App.—Dallas), *rev'd on other grounds,* 609 S.W.2d 754 (Tex.1980).

For the Bank to prevail on its assertion of actual authority, the summary-judgment proof must establish that Ruth Ebner, as executrix of the estate, conferred authority upon her attorneys or Howard Ebner to settle the lender-liability suit on the estate's behalf. The record, however, reflects that Ruth Ebner denies that she ever authorized either Howard Ebner or her attorneys to settle the lender-liability suit, and both Howard Ebner and the attorneys deny that they either had such authority or acted for Ruth Ebner as executrix in agreeing to the Assignment. Taking the evidence favorable to Ruth Ebner and the estate as true, as we must, we hold there are disputed fact issues as to whether either Howard Ebner or Ruth Ebner's attorneys had actual authority to bind Ruth Ebner and the estate of Emil Ebner to the Assignment.

■ Apparent authority may arise when the principal shows such a lack of ordinary care as to clothe the agent with *indicia* of authority. *See NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 952–53 (Tex.1996) (citing *Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex.1984)). For the Bank to prevail, the summary-judgment proof must establish that Ruth Ebner's conduct led it to believe that her attorneys or Howard Ebner held settlement authority from the estate. To support its argument, the Bank points out that the summary-judgment evidence establishes that Ruth Ebner permitted Howard Ebner and her attorneys to represent her throughout the lender-liability suit, specifically allowing Howard Ebner to "act" as executor and her attorneys to represent her during the entire trial without objection. Ruth Ebner, on the other hand, notes that the summary-judgment evidence also indicates that she did not know that the suit was being settled and did not attend the November 18, 1991 hearing. The record also contains no evidence that she was present when the other parties signed the Assignment.

■ Indulging every inference and doubt in favor of Ruth Ebner and the estate, we hold the evidence does not conclusively establish an affirmative manifestation by her toward the Bank indicating that she bestowed upon Howard Ebner or her attorneys the authority to settle the lender-liability suit. That Ruth Ebner may have allowed Howard Ebner and her attorneys to act on behalf of the estate on certain occasions does not establish, as a matter of law, that the Bank was led to believe that her attorneys were clothed with authority to settle the suit. *See Dilling,* 922 S.W.2d at 953 (principal must hold out agent as possessing authority or have knowingly and voluntarily permitted agent to act in unauthorized manner) (citing *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 778–79 (Tex.1974)). At most, the summary-judgment proof reveals that Ruth Ebner's actions during the lender-liability suit *might* give rise to apparent authority in her son or attorneys to appear and settle for the estate.

### Estoppel

The Bank asserts that the doctrines of equitable, promissory, and judicial estoppel operate to prevent Ruth Ebner from denying that Howard Ebner and her attorneys had authority to settle the lender-liability suit on her behalf. Focusing first on the doctrines of equitable and promissory estoppel, the Bank argues that Ruth Ebner's failure to inform it that Howard Ebner and her attorneys did not have the authority to settle on the estate's behalf estops her from denying their authority and thus binds the estate. The Bank relies on *Cooper Petroleum Co. v. LaGloria Oil & Gas Co.,* 436 S.W.2d 889 (Tex.1969). In *Cooper Petroleum,* the defendant's son-in-law promised the seller of gasoline products that the defendant would guarantee the purchase price. *See Cooper Petroleum,* 436 S.W.2d at 893. The seller, relying on such promises, continued to send the products to defendant's company. *See id.* When the seller sued on the promise, the defendant argued that his son-in-law did

not have the authority to bind him. *See id.* at 893–94. The Bank asserts that the *Cooper Petroleum* court "held that the promise was enforceable because the defendant's failure to inform the seller that the son had no authority to bind him estopped him from denying the son-in-law's authority." We find this statement to be only partially correct.

Although the supreme court in *Cooper Petroleum* recognized that in some instances silence may give rise to estoppel, the court held that the defendant "was under no duty to speak until he learned of the promise." *Id.* at 894; *see also Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex.1991) (citing *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952)) (to establish equitable estoppel, party must prove "a false representation or concealment of material facts ... made with knowledge, actual or constructive, of those facts"). Stated another way, the court held that after the defendant learned of his son-in-law's promise, any detrimental change of position on the part of the plaintiff in reliance on the defendant's silence would estop the defendant from denying the son-in-law's authority. *See id.* The supreme court also noted that the evidence establishing when the defendant learned of the promise was critical and the parties should have an opportunity to develop these facts. *See id.*

Ruth Ebner claims that she did not learn of the Assignment until almost six years after it was made. But the record also reveals her presence as a party in the bad-faith suit and that in July 1992, on behalf of Emil Ebner's estate, she signed answers to interrogatories in that suit stating that the Ebners had settled the lender-liability suit. There is thus conflicting evidence as to when Ruth Ebner learned of the Assignment and whether she took advantage of it to pursue the bad-faith suit.

The Bank argues that it has established the elements of promissory estoppel against the estate by showing a promise— the Assignment—by its representatives,

foreseeability that the Bank would rely on the promise, and the Bank's substantial reliance on the promise. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983). Again the evidence is not conclusive, as Ruth Ebner denies that either her attorneys or Howard Ebner were authorized to make an agreement with the Bank on the estate's behalf.

■ The Bank next asserts that the estate is "judicially estopped" from denying that Howard Ebner had authority to enter into the Assignment on the estate's behalf because Howard Ebner swore by way of affidavit that the estate authorized him to act as executor and he acted as executor of the estate throughout the lender-liability suit. Pursuant to the doctrine of judicial estoppel, a party who alleges or admits under oath a position contrary to the assertion sought to be made may be estopped from maintaining the contrary position. *See Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 295 (1956).

The fact that Howard Ebner made a sworn statement does not satisfy the inquiry; the issue is not whether *Howard* Ebner is estopped from denying that he was acting as the executor. Rather, the issue is whether *Ruth* Ebner is estopped from denying that Howard Ebner was acting on behalf of the estate. Because there is no summary-judgment proof that Ruth Ebner swore that Howard Ebner had such authority, this argument is without merit.

### Ratification and Waiver

The Bank argues that even assuming that Ruth Ebner did not authorize settlement of the lender-liability suit, the estate is bound by the agreement by virtue of her post-November 18, 1991 conduct. The Bank contends that the doctrine of ratification binds the estate to the settlement. Ruth Ebner responds that there are fact issues as to her knowledge of the Assignment that preclude summary judgment for the Bank.

"Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefit of the transaction after acquiring full knowledge." *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). "The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge." *Id.*

The Bank argues that the estate ratified the Assignment when Ruth Ebner received the Bank's $200,000 payment and pursued the bad-faith suit, both benefits of the Assignment. However, when the evidence favorable to the estate is viewed as true and every inference is resolved in its favor, the evidence reflects that both Ruth Ebner and the attorney to whom the Bank's money order was payable stated that none of the $200,000 was given to her in any capacity. In addition, although Ruth Ebner's signature appears on answers to interrogatories in the bad-faith suit in 1992, she has sworn that she did not learn of that suit until 1997 and did not authorize anyone to include her name as a party to it. Taking the evidence favorable to the estate as true, we hold that the summary-judgment proof does not *conclusively establish* the estate's ratification of the Assignment.

Finally, the Bank asserts that the estate waived its right to enforce the lend-er-liability-suit judgment suit because it waited six years to attempt execution.[27] Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987). The summary-judgment proof previously recited, when viewed in the light most favorable to the estate, does not conclusively establish that Ruth Ebner, as representative of Emil Ebner's estate, either knew that she had the right to seek the judgment's execution or that she intentionally relinquished that right.

### 5. Conclusion

The record in this case is lengthy, containing not only summary-judgment proof generated specifically for the parties' motions but also pleadings and discovery materials from both the lender-liability suit and the bad-faith suit. It includes statements by the Ebners and their attorneys that apparently conflict with previous statements or actions by them. Yet we are unable to say that the record conclusively establishes that the estate of Emil Ebner has violated either a written or an oral agreement with the Bank to which it is bound. This decision must be left to a fact finder. To the extent that the Ebners' first issue complains of the district court's granting summary judgment against the estate on the Bank's claim that it breached the November 18, 1991 agreement, the issue is sustained.[28] We hold

27. The Bank also asserts that the estate waived her right to collect the judgment because Howard Ebner and Ruth Ebner's attorneys expressly renounced the right to enforce the judgment and Ruth Ebner collected the $200,000 settlement and is litigating the Bank's claims against the insurance companies. Because we have already found that there is a fact issue regarding whether Howard Ebner and Ruth Ebner's attorneys had authority to bind the estate to the settlement agreement and whether Ruth Ebner actually collected on the settlement agreement, we decline to address these contentions again.

28. In their brief, the Ebners assert that the district court erred when he did not grant

Ruth Ebner's cross-motion for summary judgment because "that motion disproved at least one element of the Bank's cause of action and proved all essential elements of her affirmative defenses." A defendant moving for summary judgment on an affirmative defense may prevail by conclusively proving all the elements of the defense or by disproving at least one of the elements of each of the plaintiff's causes of action. *See AmWest Sav. Ass'n v. Shatto*, 905 S.W.2d 400, 403 (Tex.App.—Austin 1995, writ denied). Although the Ebners assign this contention as an "issue presented" on appeal, their brief contains no argument or authority to support it. *See* Tex.R.App. P. 38.1(h). Consequently, they have waived it.

that the absence of Ruth Ebner's signature on the Assignment does not prohibit the Bank from *urging*, on remand, that the written agreement be enforced against her and Emil Ebner's estate. *See Williams*, 43 Tex. at 120.

### B. Breach–of–Contract Claim Against Howard and Shirley Ebner

■ In their first issue, the Ebners also argue that the district court erred in granting summary judgment against Howard and Shirley Ebner because the Bank "produced no evidence that [they] committed any breach of any contract." We agree.

It is axiomatic that to prevail on a breach-of-contract claim, the plaintiff must establish that the defendant breached the alleged contract. *See Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex.App.—San Antonio 1998, pet. denied). The record reflects no evidence that Howard or Shirley Ebner has attempted to collect the lender-liability-suit judgment or has otherwise breached the Assignment. In its brief, the Bank asserts that Howard and Shirley Ebner have sought to "renege" on the agreement by Howard Ebner's stating in a pleading, in which he was attempting to remove this case from the state district court to bankruptcy court, that the Ebners "have a valid judgment which is enforceable against [the Bank]" and that Howard Ebner "is attempting to collect upon the judgment." The statements in the pleading do constitute a breach of the Assignment. Within a week, the bankruptcy court remanded the case to the state district court, observing that the effort at removal was no more than an attempt to have the enforceability of the Assignment tried by the bankruptcy court. Although the Ebners' tactic was unsuccessful and perhaps questionable, it did not rise to the level of a breach of the agreement with the Bank.

We sustain the remainder of the Ebners' first issue.

### The Ebners' Affirmative Defenses

By their third issue, the Ebners aver that the district court erred in granting summary judgment for the Bank because the Bank "failed to disprove [the Ebners'] affirmative defenses, while Ruth Ebner has established hers." [29]

In response to the Bank's breach-of-contract suit, the Ebners pleaded several affirmative defenses. All of the Ebners raised the affirmative defenses of limitations, *res judicata*, impermissible collateral attack on the lender-liability-suit judgment, laches, clean hands, and lack of due diligence. They also pleaded that suit for an injunction is an improper remedy for the Bank. Ruth Ebner raised several additional affirmative defenses, including the

*See, e.g., Horton v. Horton*, 965 S.W.2d 78, 88 (Tex.App.—Fort Worth 1998, no pet.) ("By raising an issue and failing to present any argument or authority on that issue, the party waives that issue."). Were we to consider the contention, we would overrule it, as the record no more conclusively establishes the *lack* of an agreement between the estate and the Bank than it does the *existence* of such an agreement.

**29.** The Ebners argue that the Bank failed to conclusively disprove their affirmative defenses. The Bank, however, alleged in its motion for summary judgment that there was no evidence to support such defenses. In a no-evidence summary-judgment motion, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact. *See*

Tex.R. Civ. P. 166a(i) (party "may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial"); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex.App.—Austin 1998, no pet.) (no-evidence summary judgment properly granted if nonmovant fails to bring forth more than scintilla of probative evidence to raise genuine issue as to essential element of nonmovant's claim for which nonmovant would have burden at trial). The burden was thus on the Ebners to show that there was some evidence as to each of their affirmative defenses. We will rephrase the Ebners' arguments to reflect the proper burden.

statute of frauds[30] and others to the end that there was no agreement between the estate and the Bank satisfying the provisions of Rule 11. In a motion separate from that seeking judgment on its breach-of-contract action, the Bank attacked the Ebners' affirmative defenses and moved for summary judgment on the basis that there was no evidence to support those defenses. The district-court judgment granted the Bank's motion.

■ Rule 166a(i) requires that a no-evidence motion for summary judgment must state the elements of the affirmative defense as to which there is no evidence. *See* Tex.R. Civ. P. 166a(i). Thus, the Bank must plead with specificity the elements of each of the . Ebners' affirmative defenses that the Bank claims lack support in the summary-judgment proof. Initially, the Bank's motion generally attacks all affirmative defenses of the Ebners.[31] The motion then seeks summary judgment on certain specific affirmative defenses of the Ebners: statute of frauds, *res judicata*, and "laches, unclean hands, lack of diligence, or any other time-based affirmative defense." We hold that the Bank's motion does not satisfy rule 166a(i) and is sufficient as a no-evidence motion for summary judgment only to the extent that it seeks judgment on the Ebners' affirmative defenses of statute of frauds, *res judicata*, and "laches, unclean hands, [and] lack of diligence." Insofar as the summary judgment may be read to grant the Bank's motion on any other affirmative defense, the Ebners' third issue is sustained.

■ In their answer to the Bank's suit, the Ebners asserted the defense of *res judicata*. *Res judicata*, or claim preclusion, prevents relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that,

with the use of diligence, could have been litigated in the prior suit. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). The doctrine is inapplicable to the facts of this case. Immediately before the district court signed the judgment in the lender-liability suit, an agreement that reflected all the Ebners as parties, including Ruth Ebner as executrix of Emil Ebner's estate, was signed by the Bank and Howard and Shirley Ebner. The agreement purports to say that the Ebners agreed not to attempt to collect the judgment against the Bank. For almost six years, all of the Ebners appeared to act in a manner consistent with that agreement. The Bank did not file this action to enforce the Assignment until the estate, through Ruth Ebner, acted in a manner that the Bank felt was inconsistent with it. "A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr*, 837 S.W.2d at 631. The Ebners argue that the Assignment, or at least the covenant not to execute, could have been litigated in the lender-liability suit if the Bank had asked the district court to incorporate the agreement in the final judgment. But the Ebners also argue that the final judgment was not an agreed judgment. We hold that the doctrine of *res judicata* does not apply to the estate's action to enforce the lender-liability-suit judgment and the district court properly granted summary judgment for the Bank on the Ebners' affirmative defense of *res judicata*. To the extent that the Ebners' third issue complains of such action, it is overruled.

■ In the district court, the Ebners also interposed the defense of laches. "Laches is a defense grounded upon an

---

**30.** *See* Tex. Bus. & Com.Code Ann. § 26.01 (West 1987).

**31.** The Bank's motion states: "The Bank seeks summary judgment because there is no evidence supporting the Ebners' affirmative defenses, and because the affirmative defenses

are insufficient as a matter of law to bar the Bank's enforcement of the settlement agreement between it and the Ebners. The Bank seeks summary judgment as to all the Ebners' affirmative defenses."

unreasonable delay by one having legal or equitable rights in asserting them, and a good faith change of position by another to his detriment because of the delay." *Ferrari v. Bauerle*, 519 S.W.2d 144, 148 (Tex. Civ.App.—Austin 1975, writ ref'd n.r.e.) (citing *City of Fort Worth v. Johnson*, 388 S.W.2d 400 (Tex.1964)); *see Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex.1998). The record reflects that the Bank's suit was brought within days of the estate's first attempt to enforce the lender-liability-suit judgment, almost six years after the judgment had been signed. The time between the estate's action and the Bank's reaction was not unreasonably long. More importantly, the record contains no evidence of a good-faith change in the estate's position to her detriment. *See Ferrari*, 519 S.W.2d at 148. The burden of proving the elements of laches is on the party asserting the defense. *See Jamail v. Stoneledge Condominium Owners Ass'n*, 970 S.W.2d 673, 676 (Tex.App.—Austin 1998, no pet.). Summary judgment for the Bank was proper on the Ebners' affirmative defense of laches, and their third issue is overruled in that regard.[32]

### The Permanent Injunction

The Ebners' second issue sets forth various arguments, all to the end that the district court abused his discretion in ordering that the Ebners be permanently enjoined from attempting to collect or execute on the lender-liability-suit judgment in any way. In its summary-judgment motion, the Bank requested the district court to grant the motion and "enter an order and permanent injunction in favor of the Bank and against the Ebners on the Bank's breach of contract/specific performance claims to enforce the Rule 11 settlement agreement [in the lender-liability suit]." The district court's final judgment reflects that the issue before the court was whether the Ebners could collect the lender-liability-suit judgment. After making such observation, the district court granted the Bank's motion and denied that of the Ebners. The final judgment is thus grounded on the alleged Rule 11 agreement. Because we have held that (1) issues of material fact exist regarding the Bank's right to enforce the Assignment against the estate and (2) Howard and Shirley Ebner have not, as a matter of law, breached the Assignment, and because we are returning this case to the district court for further proceedings, we vacate the district court's permanent injunction without addressing the Ebners' specific arguments. Our action is without prejudice to the Bank's right to again seek a permanent injunction in the district court.

### CONCLUSION

The record in this case does not conclusively establish the existence of an enforceable Rule 11 agreement between the estate of Emil Ebner and the Bank, nor does it conclusively establish that the estate is not contractually bound by the Assignment. Further, the record does not establish as a matter of law that Howard and Shirley Ebner breached the Assignment. We affirm the district court's grant of summary judgment for the Bank as to the Ebners' affirmative defenses of statute of frauds, *res judicata*, laches, clean hands, and lack of diligence. We reverse the remainder of the district-court judgment and remand this case to that court for further proceedings consistent with this opinion. Finally, we vacate the district court's permanent injunction without prejudice to the Bank.

---

**32.** In their brief and argument to this Court, the Ebners' assertions of "clean hands" and "lack of due diligence" were subsumed in their laches argument. Further, the Ebners do not complain of the summary judgment insofar as it holds against them on their statute of frauds defense. To the extent that the Ebners' third issue assigns error to the district court's granting summary judgment on these assertions, it is overruled.