# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00242-CV

**Jean D. O'Neill, Appellant**

**v.**

**Zurich American Insurance Company, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN301713, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

On July 19, 1999, appellant Jean D. O'Neill slipped at work and injured her back. O'Neill had long suffered back problems, and since 1995 she had been seeking treatment for a cervical injury suffered in a car accident, continuing that treatment after her July 1999 work-related injury. O'Neill went to Dr. Gordon Marshall, an orthopedic surgeon, who ruled out surgical intervention. In March 2000, Dr. William Culver examined O'Neill and determined that she had reached maximum medical improvement ("MMI") on January 20, 2000. Dr. Culver also determined that O'Neill had a 5% impairment rating. In May, Dr. Joe Powell examined O'Neill and agreed with Dr. Culver's MMI date. Dr. Powell disagreed with Dr. Culver, however, determining that O'Neill had a 3% impairment rating and that her compensable injury was limited to her lower thoracic area and did not extend into her lumbar area. In November 2000, O'Neill went to Dr. Robert Wills, who referred her to Dr. Laura Prewitt-Buchanan. In September 2002, Dr. Prewitt-Buchanan saw O'Neill

twice and wrote that O'Neill's cervical degenerative disc disease "is not part of [her] Workers Comp claim." Dr. Prewitt-Buchanan opined that O'Neill would benefit from continuing physical therapy and said it was not clear that O'Neill "should have an impairment rating done at this time."

O'Neill disagreed, asserting that her July 1999 fall caused her cervical neck injuries, and sought a contested case hearing. The hearing was held in February 2004, and the hearing officer agreed with Dr. Powell, finding that O'Neill reached MMI on January 20, 2000, with a 3% impairment rating, and that her cervical spine injury was not part of her compensable injury. O'Neill appealed, and the Commission affirmed the hearing officer's determinations.

O'Neill then filed this suit seeking to have the Commission's decision set aside. O'Neill asserted that the evidence showed that she was entitled to benefits and that appellee Zurich American Insurance Company behaved wrongfully in its treatment of her.[1] The case was submitted to a jury, which found O'Neill's impairment rating was 3%, her MMI date was January 20, 2000, and her compensable injury did not extend to her cervical area. O'Neill appeals, representing herself *pro se*,[2] arguing that the trial court erred in excluding evidence and that the evidence is legally and factually insufficient to support the jury's findings. We affirm the trial court's judgment.

---

[1] In 2005, the legislature substantially amended the provisions of the labor code pertaining to the workers' compensation system. *See* Tex. H.B. 7, 79th Leg., R.S. (2005). Those changes do not apply to this appeal.

[2] *Pro se* litigants are generally held to the same standards applied to licensed attorneys. *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978); *Foster v. Williams*, 74 S.W.3d 200, 202 (Tex. App.—Texarkana 2002, pet. denied). To allow otherwise could give a *pro se* litigant an unfair advantage over litigants represented by counsel. *Cohn*, 573 S.W.2d at 185; *Foster*, 74 S.W.3d at 202.

**Evidentiary Rulings**

O'Neill complains that the trial court refused to admit (1) two letters written by Dr. Wills that she asserts "prove the existence of" two new cervical injuries, (2) evidence by Dr. Prewitt-Buchanan about the correct impairment rating, (3) evidence that adequate testing had not been performed before the January 20, 2000 MMI date, and (4) proof that her carrier denied several requests to see a doctor before November 15, 2000.[3] She also complains that Zurich American was allowed to introduce documents never submitted in the underlying administrative proceeding.

The admission or exclusion of evidence is left to a trial court's sound discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 351 (Tex. App.—Austin 2002, pet. denied). A party complaining on appeal of the admission or exclusion of evidence must show both that the trial court's ruling was erroneous and probably caused rendition of an improper judgment. *Ganesan*, 96 S.W.3d at 351; *see* Tex. R. App. P. 44.1(a)(1); Tex. R. Evid. 103(a). The complaining party generally must show that, when the record is viewed as a whole, the judgment turns on the particular evidence excluded or admitted. *Alvarado*, 897 S.W.2d at 753-54; *Ganesan*, 96 S.W.3d at 351-52.

O'Neill complains about the admission or exclusion of several items of evidence. However, she did not have those items introduced into the record or clearly describe those items for

---

[3] O'Neill asserts that the trial court refused to admit most of her evidence but does not explain which documents were erroneously excluded or how she was harmed by any such error. This lack of clarity could give rise to a holding that O'Neill has waived her complaints. *See* Tex. R. App. P. 38.1; *Ebner v. First State Bank*, 27 S.W.3d 287, 303 n.28 (Tex. App.—Austin 2000, pet. denied). However, on careful review of O'Neill's brief, *see* Tex. R. App. P. 38.9 (briefing rules to be applied liberally), it seems that the above documents are the focus of her evidentiary complaints, and we will examine them accordingly.

the record. We recognize that as a *pro se* plaintiff, O'Neill was at a disadvantage as far as understanding the process of having evidence admitted or excluded. However, we are bound to hold O'Neill to the same standards applied to attorneys, *see Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978), and although we have liberally construed the rules and O'Neill's brief in an attempt to discern her complaints, we cannot evaluate O'Neill's excluded evidence without knowing the substance of that evidence.[4] The trial court admitted many medical records and appears to have been very thoughtful, careful, and patient in considering the evidence proffered or objected to by O'Neill. We are unable to determine whether the trial court made any evidentiary errors, much less determine whether the jury's findings turned on the evidence. Based on this record, we cannot find that the trial court's evidentiary rulings were erroneous or that any error harmed O'Neill. We overrule O'Neill's complaints related to evidentiary rulings.

## Sufficiency of the Evidence

O'Neill, as the party appealing from an appeals panel's decision, had the burden of proof at trial to show that the decision was erroneous. Tex. Lab. Code Ann. § 410.303 (West 1996). A party attacking the legal sufficiency of an adverse finding on which she had the burden of proof must show that as a matter of law she established all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We first view the evidence supporting the finding,

---

[4] O'Neill asserts that Zurich American denied "any and all discovery prior to trial" and that she was at a disadvantage because she was expected to have prepared her evidentiary objections before trial. The record does not reflect what evidence O'Neill sought during discovery, and although O'Neill struggled to comply with evidentiary procedures, the trial court gave O'Neill considerable leeway in attempting to admit or object to evidence. Based on this record and the vagueness of O'Neill's complaints, we cannot hold there was any error in the discovery process or in the trial court's applying the procedural rules to O'Neill. *See Foster*, 74 S.W.3d at 202.

disregarding evidence to the contrary when reasonable to do so. *Id.*; *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If no evidence supports the finding, we then review the entire record to determine if the contrary proposition is established as a matter of law. *Dow Chem.*, 46 S.W.3d at 241.

A party attacking the factual sufficiency of an adverse finding on an issue on which she had the burden of proof must show that the finding is against the great weight and preponderance of the evidence. *Id.* at 243. We consider all of the evidence and will set aside a verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* The jury as fact-finder is the sole judge of witness credibility and the weight to be given the testimony. *Simons v. City of Austin*, 921 S.W.2d 524, 531 (Tex. App.—Austin 1996, writ denied). We will not substitute our opinion for that of the jury if the verdict is sufficiently grounded in the evidence. *Id*.

O'Neill attacks the 3% impairment rating, arguing that Dr. Powell, the designated doctor who assigned that rating, made his determination based on incomplete information, refused to consider Dr. Culver's opinion that the rating was 5%, refused to review missing medical reports presented during trial, and had treated her in the past and thus was biased against her and focused on earlier injuries, not her work-related injury. She also alleges that the various reports prepared and reviewed by the doctors in this case contained errors or inconsistencies.

At trial, O'Neill presented testimony by doctors Jeff Butts, Laura Prewitt-Buchanan, and Joe Powell. Dr. Butts testified that he was O'Neill's treating doctor from July 28, 1999, about two weeks after her fall at work, until March 2000. Dr. Butts testified that O'Neill never mentioned her neck or asserted that her neck injury was related to her fall at work. Early in his treatment of

5

O'Neill, he referred her to Dr. Marshall, an orthopedic surgeon, because there was a "possibility of an old—or because of a possibility of a compression fracture." In mid-November, O'Neill was also referred to Dr. Mahendru, a specialist in treating chronic pain, but in early December, she missed an appointment with Dr. Mahendru, which raised Dr. Butts's concerns about O'Neill's compliance with medical recommendations. In mid- and late-December, O'Neill sought pain medication from Dr. Butts. He testified that by that point, he was beginning to suspect "drug-seeking behavior," and he refused to prescribe the requested medication and required all narcotics to come from Dr. Mahendru. At trial, Dr. Butts reviewed O'Neill's medical records and discovered that on October 12, 1999, O'Neill went to Brackenridge seeking pain medication and reporting that she had suffered neck pain and numbness since a cervical fusion operation in November 1998. She also told Brackenridge that Dr. Butts did not have time to see her. Dr. Butts, however, testified that on October 5, O'Neill had come to him seeking pain medication, but Dr. Butts told her to decrease her use of codeine and get medications from only one doctor. Dr. Butts was not aware that during the same time he was treating O'Neill, she had sought treatment at Brackenridge Hospital.

Dr. Butts further testified that O'Neill told him she was going to several hours of physical therapy a day, but the therapy center told him that she had not been coming regularly and was distracted when she did attend. Dr. Butts testified that patients sometimes have "another motive besides what they—you know, the complaint they present with. And so an example would be a patient that continues to have pain and doesn't improve because either they have a drug addiction issue and they're clouded by their need for drugs. The second thing can be basically insurance reimbursement . . . related to being able to stay off work or receive payment for disability." Dr. Butts testified that there was evidence of such behavior in O'Neill's case.

6

In April 2000, Dr. Butts received a report from Dr. Powell, the designated doctor, stating that O'Neill had reached MMI in January 2000. Although Dr. Butts agreed with that report, in August 2002 he wrote a letter at O'Neill's request that stated she continued to have chronic pain in her lower thoracic area. Dr. Butts testified that he wrote the letter because he wanted O'Neill to have any assistance and benefits available, but he testified that in hindsight he regretted writing it and that he agreed that O'Neill reached MMI in January 2000. Dr. Butts said it appeared that only three pages of his approximately twenty-page report were included in the designated doctor's records. He said, "I can't really answer at what point the records were copied and submitted, but I can tell you that we submit all the records we have at the time to our designated doctor."

Dr. Laura Prewitt-Buchanan testified that she first saw O'Neill about eighteen months after O'Neill's fall at work. Dr. Prewitt-Buchanan compared a myelogram taken of O'Neill's neck about nine months before O'Neill's work-related injury to one taken about eighteen months after the injury and found "evidence of a cervical disc disruption that was not seen prior to your injury but was seen after your injury." Dr. Prewitt-Buchanan knew that O'Neill had fusion surgery on her cervical spine between the time the two myelograms were taken and that O'Neill had a history of cervical degenerative disc disease. Dr. Prewitt-Buchanan testified at trial that O'Neill's cervical injury was related to her work injury. However, her notes indicated that O'Neill's cervical degenerative disc disease was not part of her work-related claim and that O'Neill had requested a "clarifying note for workers compensation. This is not related to her cervical problems."

Dr. Joe Powell, the designated doctor who determined O'Neill's MMI date and impairment rating, testified that O'Neill's complaints following her fall at work were related to her lower thoracic area. Dr. Powell did not believe that O'Neill's lumbar area was damaged by the fall,

7

and he stated that calcification in her back was not related because calcification takes longer to develop. He explained that although he reviewed O'Neill's medical records dating back to the time of the accident, his determinations were based on O'Neill's condition at the time of her evaluation in May 2000, rather than her condition earlier, when she first saw Dr. Butts or other doctors. Based on his examination and his review of O'Neill's medical records, including her injuries sustained in the earlier automobile accident, Dr. Powell believed that O'Neill's work-related injury was limited to her thoracic area and did not extend to her lumbar or cervical areas. Dr. Powell also believed O'Neill was "consciously restricting" her range of motion during her exam. He looked at Dr. Culver's impairment rating for her lumbar area and threw out those results because the range of motion findings were inconsistent with O'Neill's "clinical presentation." Dr. Powell agreed with Dr. Culver's determination that O'Neill reached MMI in January 2000. Dr. Powell testified that his examination at trial of records he may not have reviewed when making his initial determinations did not change his opinion of O'Neill's impairment rating or MMI date.

Although O'Neill complains of inconsistencies between the various doctors and reports, Dr. Powell testified that in his opinion, O'Neill's injury was limited to her thoracic area and that she reached MMI in January 2000. Dr. Powell explained why he disregarded Dr. Culver's finding of a compensable lumbar injury, saying the range of motion measurements of her lumbar area were inconsistent with her observed behavior and motion; Dr. Powell believed O'Neill was consciously attempting to limit her motion. Likewise, Dr. Butts opined that O'Neill had secondary reasons for seeking pain medication, and he refused to prescribe pain medication when he knew she was under the care of a chronic pain specialist. He was not aware until trial that she had sought pain medication at Brackenridge shortly after he refused to prescribe it. Dr. Butts also testified that

8

although he wrote a letter at O'Neill's behest stating that she continued to have pain, he agreed with Dr. Powell's MMI determination. O'Neill had sustained back injuries and had surgery on her cervical spine several years before this fall, and there was testimony that following her fall, her early reports of pain were limited to her thoracic area, possibly extending slightly into her lower lumbar area. The jury found that O'Neill's injury was limited to her thoracic area, that she had a 3% impairment rating, and that she reached MMI on January 20, 2000. Based on this record, we cannot hold that the jury's findings lack any evidentiary support or are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem*., 46 S.W.3d at 241-42. The evidence is both legally and factually sufficient to support the jury's findings.

## Conclusion

Having determined that the evidence is legally and factually sufficient to support the jury's determinations, and having held that O'Neill has not shown any error or harm in the trial court's evidentiary rulings, we affirm the jury's verdict and the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed: October 20, 2005

9